UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

L<small>ARRY</small> L<small>EE</small>,

    Plaintiff,

v.

W<small>ASHTENAW</small> C<small>OUNTY ET AL</small>.,

    Defendant.
_____/

Case No. 19-10830

S<small>ENIOR</small> U. S. D<small>ISTRICT</small> J<small>UDGE</small>
A<small>RTHUR</small> J. T<small>ARNOW</small>

**O<small>RDER</small> G<small>RANTING</small> D<small>EFENDANTS</small> W<small>ASHTENAW</small> C<small>OUNTY</small> C<small>OMMUNITY</small> H<small>EALTH</small>, A<small>NGELA</small> B<small>URCHARD</small>, <small>AND</small> C<small>HRISTINA</small> J<small>OHNSON</small>'<small>S</small> M<small>OTION FOR</small> S<small>UMMARY</small> J<small>UDGMENT</small> [21]**

On March 20, 2019, Plaintiff Larry Lee, who identifies as transgender[1], commenced this civil rights action against Defendants Washtenaw County, Washtenaw County Community Mental Health (CMH), and its social workers, Angela Burchard and Christina Johnson. On September 21, 2018, having recently been evicted from their home and physically and sexually assaulted, Plaintiff went to CMH seeking mental health treatment and housing. Plaintiff alleges that Defendant social workers Burchard and Johnson discriminated against Plaintiff by failing to accommodate Plaintiff's housing requests and instead directed Plaintiff to sleep in a neighboring parking garage. Upon this recommendation, Plaintiff slept in

---

[1] For purposes of this order, the Court will use non-binary pronouns for Larry Lee.

the garage that night and was allegedly sexually assaulted at gun point by an unknown assailant. Plaintiff now sues Defendants for causing the assault and Plaintiff's subsequent mental decline.

Before the Court is Defendants CMH, Burchard, and Johnson's Motion for Summary Judgment [21] filed on September 13, 2019. Plaintiff filed a Response [24] on October 10, 2019. Defendants filed a Reply [25] on October 24, 2019. Defendant Washtenaw County also filed a Motion for Summary Judgement [30] on March 27, 2020. Plaintiff filed a Response [31] on June 30, 2020. The Court held a hearing on both motions on September 3, 2020. On September 4, 2020, the Court granted Defendant Washtenaw County's Motion for Summary Judgement [30]. For the reasons stated below, the Court **GRANTS** Defendants CMH, Burchard, and Johnson's Motion for Summary Judgment [21].

## FACTUAL BACKGROUND

Plaintiff, Larry Lee, is a 42-year-old transgender individual who is biologically male and often presents as female by wearing long wigs and makeup. (ECF No. 31-1, PageID.352-53). Plaintiff claims that on August 24, 2018, they were violently evicted from a room they were subletting in Ann Arbor. (*Id*. at 298, 303). Plaintiff claims that a man who worked for their landlord forced Plaintiff to move out by physically attacking Plaintiff and calling them the n-word. (*Id*. at 297). Plaintiff's belongings were thrown out in the process. (*Id*.).

Afterwards, Plaintiff couch surfed for several weeks and experienced significant mental health problems, including severe depression, anxiety, suicidal ideations, and post-traumatic stress in the form of audio and visual hallucinations and flashbacks. (ECF No. 31-3, PageID.433-34); (ECF No. 30-2, PageID.412, 214). During this time, Plaintiff also slept in a friend's garage for a few days. (ECF No. 31-1, PageID.304). While there, Plaintiff alleges that they were sexually assaulted by an unknown man. (*Id.* at 307). Plaintiff neither reported this incident to the police nor sought medical treatment. (*Id.*). Shortly thereafter, Plaintiff left their friend's garage and sought treatment at the psychiatric ward at the University of Michigan Hospital. (ECF No. 30-2, PageID.210). The hospital then made an appointment for Plaintiff to be seen at CMH for continued mental health treatment and assistance in finding temporary housing. (*Id.*).

The parties' accounts of Plaintiff's appointment, on Friday, September 21, 2018, largely diverge. Plaintiff claims that Defendants were deliberately indifferent to Plaintiff's accommodation requests and outright refused to help, while Defendants claim that they spoke to Plaintiff for approximately two hours regarding various housing options but Plaintiff refused them all, leaving them to suggest the parking garage as the only viable option. The Court will address each account in turn.

### a) Plaintiff's Account:

Plaintiff first met with Angela Burchard at CMH. Burchard is a social worker on CMH's crisis team, which helps people experiencing a mental health crisis. (ECF No. 31-2, PageID.402). Plaintiff told Burchard that as a result of their eviction and assaults, they were homelessness, had hallucinations, 8-10 out of 10 depression, intense migraines, and daily thoughts of suicide. (ECF No. 31-3, PageID.433-34). Due to their assault, Plaintiff asked to be placed in a shelter that would either allow them to be separated from men or have a security system, such as an on-site employee or a camera. (ECF No. 30-2, PageID.216).

Plaintiff claims that Defendants did not even attempt to accommodate the requests and instead stated "well that's not going to happen[,] [w]e can't do that." (ECF No. 31-1, PageID.323). Plaintiff also states that Defendants did not call any shelters to verify if the requested conditions were possible. (*Id.* at 318, 326, 394). Plaintiff states that Plaintiff was also never presented with different housing options. (*Id.* at 328). Plaintiff further alleges that they requested to be hospitalized for their suicidal thoughts, but Defendants responded that hospitalization was not "necessary." (*Id.* at 319).

At some point during the conversation, Burchard brought in Christina Johnson. (ECF No. 30-3, PageID.241). Johnson is a social worker on CMH's homeless outreach team. (ECF No. 31-2, PageID.400). Plaintiff states that Johnson

told them to sleep in the parking garage across the street. (ECF No. 31-1, PageID.336-37). Plaintiff states that due to their mental illness, they trusted Defendants' judgment and slept at the parking garage that night. (*Id.* at 378-79). Plaintiff alleges that at some point during the night, they were sexually assaulted at gun point. (*Id.* at 340).

Plaintiff claims that they recorded parts of the conversation with Burchard and Johnson on Plaintiff's phone. (*Id.* at 316-17). There is no indication that Defendants were aware of the recording and consented. (ECF No. 31-3, PageID.441). No recordings were provided to the Court.

### b) Burchard and Johnson's Account:

Burchard claims that Plaintiff told her about their mental illnesses and housing accommodation requests. (*Id.* at 431-34). She claims that she discussed several housing and treatment options for Plaintiff, each of which Plaintiff declined. (*Id.* at 438). These options included: partial hospitalization at one of two hospitals that offer daily group therapy from 9 a.m. to 3 p.m. for one to two weeks and SafeHouse, a domestic violence shelter. (*Id.* at 435); (ECF No. 30-3, PageID.240). Burchard claims that she called SafeHouse and was told they were full. (ECF No. 31-3, PageID.439). Burchard also claims that she offered to take Plaintiff to the hospital for psychiatric treatment due to their suicidal ideations and recent sexual assault, but Plaintiff declined because Plaintiff did not want to sit in a lobby with lots of people.

(*Id.* at 433-34). Burchard also called the Crisis Residential House, a house where people can stay for several days to stabilize after a mental health crisis. (*Id.*). The staff informed her that if Plaintiff wanted their own room, they would have to wait till Monday (this conversation took place on a Friday). (*Id.*). It is unclear from the record whether Plaintiff declined this offer or if the room became unavailable. (*Id.*). Either way, because Burchard was not having success accommodating Plaintiff, she brought Johnson, a homeless outreach social worker, into the assessment to present more housing options. (*Id.* at 438).

During the assessment, Johnson became aware of Plaintiff's prior sexual assault, but it is unclear whether she was aware of Plaintiff's mental illnesses. Johnson states that Plaintiff "declined wanting to access shelter" because their recent sexual assault made them "uncomfortable with being around people." (ECF No. 31-2, PageID.404). In response, Johnson presented Plaintiff with the following housing options: 1) a church where individuals experiencing homelessness often sleep or 2) assistance setting up camp at a designated campsite in a wooded area. (ECF No. 30-4, PageID.248). Plaintiff declined both options. (*Id.*). When Plaintiff declined, Johnson claims that she suggested that Plaintiff could sleep in the public parking garage, because it was isolated and would be safer since less people are present at night. (*Id.* at 248-49). Johnson claims that she suggested the garage, because she and another co-worker made the same suggestion with a previous client and she is not

Page **6** of **15**

aware of any harm that came from the situation. (ECF No. 31-2, PageID.418). She also claims she suggested the garage because Plaintiff indicated that they had been sleeping in parking garages around town. (*Id.*). Plaintiff denies this and claims that they only slept in a friend's garage beforehand. (ECF No. 30-2, PageID.224).

### c) Aftermath

After the assault in the garage, Plaintiff was examined the next day at the University of Michigan Hospital ER and a rape kit was produced. (*Id.*); (ECF No. 31-1, PageID. 392). The police came to the hospital to write a report, but the rape kit was not released to them. (*Id.*). Due to their distrust of police, Plaintiff ultimately declined to press charges against the alleged assailant. (ECF No. 30-5). Plaintiff states that the assault "compounded and magnified the depression 100 times more." (ECF No. 30-2, PageID. 233). Plaintiff continues to go to CMH for treatment. They are now living in Section 8 housing in Ann Arbor. (ECF No. 31-1, PageID. 294).

Plaintiff filed a Complaint [1] alleging 42 U.S.C. § 1983 municipal liability against Defendant Washtenaw County (Count I), and violations of the Equal Protection Clause (Count II), Americans with Disabilities Act (Count III), and Fair Housing Act (Count IV). (ECF No. 1). Plaintiff further alleges the following state law claims: Elliot-Larsen Civil Rights Act violations (Count V), Negligence/Gross Negligence (Count VI), Intentional Infliction of Emotional Distress (Count VII), and Mental Health Code violations (Count VIII). (*Id.*).

## LEGAL STANDARD

Summary judgment is appropriate "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). The moving party has the burden of establishing that there are no genuine issues of material fact, which may be accomplished by demonstrating that the nonmoving party lacks evidence to support an essential element of its case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A genuine issue for trial exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Additionally, the Court views all of the facts in the light most favorable to the non-moving party and draws all reasonable inferences in the non-moving party's favor. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Anderson*, 477 U.S. at 255.

## ANALYSIS

**I.   Affidavit of Merit**

Defendants seek summary judgment, because Plaintiff failed to comply with a Michigan law that requires plaintiffs to submit an affidavit of merit with their complaints in malpractice cases. Specifically, the law states that "the plaintiff in an action alleging medical malpractice . . . shall file with the complaint an affidavit of merit signed by a health professional who the plaintiff's attorney reasonably believes

meets the requirements for an expert witness under section 2169." Mich. Comp. Laws § 600.2912d.

Plaintiff argues that, because this is an ordinary negligence case and not a medical malpractice case, an affidavit of merit is not required. While the Court agrees with this response, there is an even clearer ground to deny Defendants' arguments: as a state procedural rule, the affidavit of merit requirement does not apply to diversity and supplemental jurisdiction cases in federal court. The Sixth Circuit has stated under the Supremacy Clause, "the Federal Rules govern *procedural* issues" and "displace[] inconsistent state law." *Gallivan v. United States*, 943 F.3d 291, 294 (6th Cir. 2019) (emphasis in original). Consequentially, it held that the plaintiff, who filed a complaint in federal court "does [not] need an affidavit of merit to state a claim for medical negligence." *Id. See also Herriges v. Cty. of Macomb*, No. 19-12193, 2020 WL 3498095, at *11 (E.D. Mich. June 29, 2020) ("As is clear from [Federal Rule of Civil Procedure] 8(a)'s language, there is no requirement that any affidavit of merit must be filed to commence a medical malpractice case in federal court . . . [t]he presence or absence of an affidavit does not render the complaint defective or subject it to dismissal." (quoting *Long v. Adams*, 411 F. Supp. 2d 701, 705-07 (E.D. Mich. 2006))).

Although Plaintiff succeeds on this issue, the arguments in the briefs presented in Defendants' Motions [21] [30] and during the hearing lead the Court to

conclude that there is no genuine issue of material fact to allow the case to survive summary judgment.

I.     **Count II: Equal Protection**

Plaintiff's Equal Protection claim fails, because there is no evidence of discrimination against them on the basis their gender identity and/or mental illness. The Court construes Plaintiff's pleadings as alleging an equal protection violation under the "class of one" theory. *See* (Compl. ¶ 52); *see also* (ECF No. 31, PageID.275). Under this claim, Plaintiff must show that they have been "intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000).

> The "rational basis" test means that courts will not overturn government action "unless the varying treatment of different groups or persons is so unrelated to the achievement of any combination of legitimate purposes that [the court] can only conclude that the [government's] actions were irrational." A "class of one" plaintiff may demonstrate that a government action lacks a rational basis in one of two ways: either by "negativ[ing] every conceivable basis which might support" the government action or by demonstrating that the challenged government action was motivated by animus or ill-will.

*Warren v. City of Athens, Ohio*, 411 F.3d 697, 710-11 (6th Cir. 2005) (citations omitted). Animus or "'[d]iscriminatory purpose' . . . implies more than intent as volition or intent as awareness of consequences. It implies that the decisionmaker . . . selected or reaffirmed a course of action at least in part 'because of,' not merely 'in

spite of,' its adverse effects upon an identifiable group." *Pers. Admin'r of Mass. v. Feeney*, 442 U.S. 256, 279 (1979).

Here, Plaintiff has neither shown that they were treated differently from similarly situated individuals seeking housing nor that a difference in treatment was motivated by animus. Plaintiff's only allegation of differential treatment is that Defendants ignored Plaintiff's accommodation requests and sent them to sleep in a parking garage. This alone, however, is insufficient to prove an equal protection violation. First, Plaintiff has not shown evidence that Defendants treated similarly situated non-transgender individuals or individuals without mental illness differently. Second, Plaintiff does not allege that Defendants displayed any contempt in regard to Plaintiff's mental illness. Further, the record does not indicate that the parties even discussed Plaintiff's gender identity during the assessment, let alone expressed animus towards Plaintiff *because of* their gender identity. Therefore, Plaintiff's Equal Protection claim against Defendants fails.

## II. Count III: Fair Housing Act (FHA)

The FHA states that it is unlawful "to discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection therewith, because of race, color, religion, sex, familial status, or national origin." 42 U.S.C.A. § 3604. Discrimination includes "a refusal to make reasonable accommodations in rules, policies, practices, or services,

when such accommodations may be necessary to afford such person equal opportunity to use and enjoy a dwelling." *Id.* "To prove that a housing provider failed to reasonably accommodate a disability, a plaintiff must prove that: (1) she suffers from a disability within the meaning of FHA; (2) the defendant knew or reasonably should have known of the disability; (3) the requested accommodation may be necessary to afford 'an equal opportunity to use and enjoy the dwelling;' (4) the accommodation is reasonable; and (5) the defendant refused to make the accommodation." *Overlook Mut. Homes, Inc. v. Spencer*, 415 F. App'x 617, 621 (6th Cir. 2011) (quoting *DuBois v. Ass'n. of Apartment Owners of 2987 Kalakaua,* 453 F.3d 1175, 1179 (9th Cir. 2005)).

Defendants argue that this claim fails because CMH is a mental health agency, not a housing provider. The Court concurs with this argument. The FHA "applies only to the 'providers of housing, such as owners and landlords, and [ ] municipal service providers." *Kingman Park Civic Ass'n v. Gray*, 956 F. Supp. 2d 260, 264 (D.D.C. 2013) (quoting *Clifton Terrace Assocs., Ltd. v. United Techs. Corp.,* 929 F.2d 714, 719 (D.C.Cir.1991)); s*ee also Clifton Terrace Assocs., Ltd.,* 929 F.2d at 719 (the FHA's language "is clearly confined to discrimination by the providers of housing").

The Act additionally bars any entity "whose business includes engaging in residential real estate-related transactions" from discriminating. 42 U.S.C. § 3605.

A "Residential real estate-related transaction" is further defined as "(1) [t]he making or purchasing of loans or providing other financial assistance-- (A) for purchasing, constructing, improving, repairing, or maintaining a dwelling; or (B) secured by residential real estate[,] (2) [t]he selling, brokering, or appraising of residential real property." *Id.* There is no indication that a third party who merely provides housing information, but does not itself provide housing, can be held liable under the FHA. Furthermore, Plaintiff has not presented any case law to the contrary. Plaintiff's FHA claim fails.

### III.  Count IV: ADA

The *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973) framework governs Plaintiff's discrimination claim under the ADA. *See Marshall v. The Rawlings Co. LLC*, 854 F.3d 368, 384 (6th Cir. 2017). First, Plaintiff bears the burden of establishing a prima facie case of discrimination. If Plaintiff establishes a prima facie case, the burden shifts to Defendant to set forth a legitimate non-discriminatory reason for excluding them from program participation. Finally, the burden shifts back to Plaintiff to show that Defendants' proffered reason is a pretext for discrimination.

To establish a prima facie case of discrimination under the ADA, Plaintiff must show that "(1) [they have] a disability; (2) [they are] otherwise qualified; and (3) [they are] being excluded from participation in, being denied the benefits of, or

being subjected to discrimination under the program solely because of [their] disability." *Tucker v. Tennessee*, 539 F.3d 526, 532 (6th Cir. 2008) (citing *Dillery v. City of Sandusky,* 398 F.3d 562, 567 (6th Cir. 2005)).

Plaintiff has failed to establish a prima facie case because there is a dearth of evidence that Defendants excluded them from housing or any other programming because of their mental illness. First, and foremost, Defendants merely assist clients in accessing housing through presenting available options. Defendants do not have the authority to exclude Plaintiff's access to shelters. The record shows that Defendants presented a multitude of options to Plaintiff that they declined, leaving them to suggest the only other secluded area where Plaintiff could sleep: the parking garage. However, even when looking at the facts in the light most favorable to Plaintiff by assuming that these options were not presented, there is no evidence that Defendants sent Plaintiff to sleep in a parking garage *because* of their mental illness.

Second, assuming arguendo that Plaintiff can establish a prima facie case, Plaintiff's Response [31] brief does not attempt to present an argument of pretext in light of Defendants' legitimate reasons for not accommodating Plaintiff's requests. Therefore, this claim fails.

IV. **State Law Claims:**

Plaintiff also brings common law and statutory claims under Michigan law. Because the Court has dismissed all of the claims it has original jurisdiction over, it

declines to exercise supplemental jurisdiction over Plaintiff's state law claims. *See* 28 U.S.C.A. § 1367(c)(3) ("The district courts may decline to exercise supplemental jurisdiction over a claim . . . [if] the district court has dismissed all claims over which it has original jurisdiction").

## CONCLUSION

Accordingly,

**IT IS ORDERED** that Defendants' Motion for Summary Judgment [21] is **GRANTED**.

**IT IS FURTHER ORDERED** that this case is **CLOSED**.

**SO ORDERED**.

s/Arthur J. Tarnow<br>
ARTHUR J. TARNOW<br>
SENIOR U.S. DISTRICT JUDGE

Entered: March 11, 2021